May it please the Court. Scott Christie, lawfirm of McCarter & English, on behalf of the appellants Sequalt and Tractel. Your Honors, this case is before you based upon an improvident grant of summary judgment by the district court below, which was exacerbated by an award of fees and costs. And we've consolidated the two appeals before you here today. If I understand your position correctly, you're basically saying that the nonfunctional disc golf association factors were improperly weighed by the district court, and if they were properly weighed, there would be a material issue of fact, and you need to go to trial. Is that basically your position? Basically, Judge, that is correct. Not only was it improvidently and improperly weighed, the district court did not even consider those to be the controlling factors and even walked through them and make a meaningful analysis of them in this context. How do you weigh them? I mean, it looks to me like – well, let's hear what you – what do you say with respect to the third factor, for example, in terms of the advertisements and the exterior? Right. With regard to the advertisements, Judge, we had a declaration of Mr. Thieve, T-h-e-v-e, with associated attachments. Mr. Thieve was the longstanding designer for the company, and he made it clear that the advertisements did not tout the exterior of the design, but rather the interior workings. But didn't he say that it had utilitarian advantages? No, Judge. He did not say it had utilitarian advantages. He focused on the internal workings of being reliable. Well, he talked about the fins dissipating heat, which is a design element and a functional element. He talked about the caps keeping water and debris out of the machine. He talked about why things are cylindrical. I mean, because inside a cylinder, motors are going around. So it seemed to me, in looking at Mr. Thieve's deposition testimony, he basically laid out the case for functionality in an honest way. Why shouldn't it be credited that way? Well, Judge, I disagree with that assessment. What he did is he acknowledged, as he should, that a motor is a motor and it powers a mechanical device. He acknowledged that a gearbox has fins on it. But what he respectfully, I don't believe he acknowledged, was that these were functional components. Well, he didn't use those words, but that's the legal conclusion to be drawn from that, because isn't what he described a functional aspect of those parts of the device? What he did, Judge, is he acknowledged that certain portions of the device help make the product work, but that the device in the way that it is, the exterior appearance, does not necessitate or direct that it function in a particular way. So let me ask it in a different way. When you look at these trade dress cases and you also look at design elements, one of the questions asked is, what are the design elements that are nonfunctional? And, of course, you can also look at the aggregate, I recognize. So if we were to go at it that way and say, can you describe to us what aspects of this device are aesthetic and nonfunctional? Yes, Judge. As you noted in the Click Billiards decision, it's the tapestry. It's the overall visual appearance, which is what we have to focus on. So when we're doing that, we look at the entirety of the design, which is the rectangular gearbox with the horizontal fins. It is the motor in the vertical position, which is cantilevered off center of the gearbox. It is attached by a square flange. It has a rectangular control box. It is rectangular. Well, but, you know, like it's attached by a square flange. Right there, you need an attachment device. In other words, it can't hang out there in space. It's got to join. So why isn't that functional almost by definition? Well, because it does not have to be attached in that manner. It can be attached by a round flange or an oval flange, or it can be actually attached to the motor directly without a flange. So by virtue of the desire to create an angular appearance, right angles is the key to the design here. The Tractel sought to maintain this longstanding design over many, many years to promote identification, source identification and the associated. Did you introduce examples of other devices or similar type devices that don't implement this kind of an angular design? We did, Judge. And I would commend to your attention the attachments to the Thieb declaration. And I have the page citation here. All right. Specifically, Your Honor, I would refer you to ER 588 through 590 and even further through 599 and even further than that through ER 610. ER 588, 589 and 590 are particularly instructive because they compare and contrast the hoists that are sold in the U.S.  And they show, as you can see, that the orientation of the motors in those are horizontal as opposed to vertical, that some motors have fins on them and some motors don't have fins. Some, in fact, have a motor which is completely enclosed in plastic. And the gearboxes are different. Let me just take the fin element. Yes, Judge. Maybe your device is a better device, but because Mr. Thieb says the fin element actually has this functional purpose of dissipating heat, apparently, as it hits the metal. So would you agree that an aspect that is designed to dissipate heat is a functional element? Well, Mr. Thieb did not say that it was designed to dissipate heat. As a consequence of the way it is designed, it has that effect. But it was primarily designed for its aesthetic appearance, if you check. Well, but it's not a subjective intent design standard, is it? Well, Judge, I think it is. I mean, the intent of the tractile was to create this design separate and apart from the function. A hoist does not need this design to function. There is comparable quality and performance of other hoists that are, as I've demonstrated, in wildly diverse and different designs. So respectfully, Judge, I would not agree. Okay. Can we go to the fourth factor? I don't see any evidence suggesting that the tractile's hoist result from a comparatively simple or inexpensive method of manufacture, and indeed that almost all the hoists that are marketed in the United States cost about $2,000 to produce. If that's accurate, how do we weigh the fourth factor? Is it neutral? Does it weigh in favor of non-functionality? What's your perspective on that? My perspective on that, Judge, is that it weighs in favor of tractile and in favor of non-functionality. The fourth factor, as has come from the jurisprudence of this Court, is to deal with economies of scale. Does the design make it easier by virtue of an economies of scale argument and therefore cheaper to make, to manufacture and produce? And in this case, the answer is no. All hoists are cost about the same, regardless of the design. So let's, for purposes of discussion, let's assume that it's either neutral or that way. You've got four factors. Let's say that the first two factors weigh in your client's favor. The third one maybe doesn't. Fourth one, neutral or in your client's favor. How are we to determine or apply these tests? Do you have to have them all? Do you have a preponderance, a majority? How does it work? And if it does, what do we do? Then just send it back to the district court for trial to make a determination before a trier of fact as to how these are to be measured? Yes, Judge. I think that's correct. Again, we are not seeking summary judgment ourselves. No, I understand that. It is showing that there are material facts in dispute that may grant a summary judgment in Provident here. And in this particular case, how do you weigh the four factors? If you, you know, obviously all four, then that's easy. But if it isn't all four, then how does the case law say that we're supposed to deal with it? Well, you know, based upon the case law as it stands, you know, certainly the first factor, the design yielding a utilitarian advantage or not, is clearly important, as is the instances of alternative design. I echo your sentiment, Judge, that Tractel has prevailed or could well prevail on those two prongs. And I would suspect that in weighing the four fiscal prongs, that those two would be the most. If only those two alone, if you prevailed only in those two, would that still compel us to send this back to the district court for trial? Yes, I think it would, Judge. And what case do you rely upon in terms of what's the tipping point, if you will, in terms of the four? In terms of the four, I don't think that it is well settled that there is a tipping point. I don't think that this Court has gone through and prioritized the factors in the But my own view, based upon what I've seen in the case law, is that the first two factors are probably the most important, but that all four factors should be considered by the Court in rendering a decision of functionality. And clearly, the determination of whether something is functional is a question of fact. Is it not under Click's billiards? It is a question of fact, Judge. Yes. Let me ask you about the one thing that I was surprised that these briefs are under seal. We normally don't have things under seal unless they're extraordinarily confidential in terms of trade secrets. And I look at all these declarations and things that relate to functionality, and I don't see any real trade secret here. Is there something specific you can identify that as to why the whole shebang is under seal? I'm not aware, Judge. I believe that the Respondents filed the motion to seal. And part of the concern. I mean, from your perspective. From our perspective, part of the concern is that my client is facing knockoffs of its hoists by Chinese manufacturers day in and day out, and is very concerned about proliferation of such activities. And to the extent that. I know. But to the extent this is out in the market, it's available for reverse engineering. And so I'm really trying to understand what's behind those declarations that is sensitive to your client. Right. I think what is most sensitive would be, you know, aspects of the Thieve Declaration, which talk about the historical development of the design. But I agree with you, Judge, that this is not an issue where we have a great deal of trade secret material here. I know you don't have much time left, but would you talk briefly about the fees? Let's assume that we, just for talking purposes, agreed with the district court's outcome on the trade address analysis. Would you talk about the fees briefly? I would, Judge. May I retain two minutes for rebuttal? You only have a minute left. So I'm going to give you two minutes for rebuttal. Okay, Judge. You have one minute to talk about the fees. Fair enough, Judge. I can do that. On the fee issue, again, both for the fees and the costs, it requires that Respondent be a prevailing party, and our argument, of course, is that they are not and should not be a prevailing party, and by virtue of that, there should be no finding in their favor, and that should be overturned. On the merits, Judge, this is not an exceptional case. An exceptional case requires that it be groundless, unreasonable, vexatious, or pursued in bad faith. It's a de novo standard of review. Clearly, Tractel has provided a reasonable legal and factual basis. Other courts have upheld and found there to be trade secrets for mechanical-type devices like a poker table, a mat cutting tool, a tool to make bows, a juicer, a lamp. And in fact, the PTO has issued registrations on the principal register for a number of mechanical tools and products. There was no bad faith in Tractel pursuing this case. And, you know, at the very least, it was a good faith basis to extend case law based upon the Atlas Equipment v. Weir Minerals case, which was very analogous insofar as, in that case, we were dealing with a slurry pump as opposed to a hoist here. And that while the Court granted summary judgment, the Court found that there was not grounds to grant fees because the trade dress law was unsettled and because the company against whom summary judgment was granted presented evidence on two out of the three factors that were required. Thank you. We'll save the remaining time for rebuttal. Thank you. Good morning. Good morning, Your Honors. Donna Doblik on behalf of Jiangsu-Shanxi Construction Machinery Company. Tractel's argument below and on appeal including today suffers from three fundamental and fatal flaws. The first flaw is that Tractel never recognizes that it has the burden of proving nonfunctionality, non-functionality.   The third flaw is that Tractel does not recognize that it has the burden of proving  The fourth flaw is that Tractel does not recognize that Jiangsu had the burden of proving functionality. Because we're dealing here with an unregistered design, trade dress protection under the Lanham Act is at its lowest ebb. The design has proved Help me with this. I thought they had obtained a design patent for the hoist. Is it ER 484 through 87? Your Honor, there's a design patent in the record at page 484. That design patent is held by a company that has not been shown to have any relationship to Tractel. The inventor is listed as somebody who was not ever identified as the inventor of the Tyrek hoist. Those names appear in our brief on page 22, footnote 2. Did the district court consider that in making its determination? The district court did not consider the design patent. And perhaps the most critical problem with the design patent is twofold. One, it was obtained in 2003, whereas the record is undisputed that the Tyrek trade dress had been on sale in the United States since the early 80s. You're talking about facts that normally would be weighed by a trier of fact, right? No, Your Honor. As a matter of law, the patent is either invalid by the on-sale bar or it's described in the design patent as being a new design in 2003. There's no evidence even linking the drawings in that design patent to the Tyrek hoist. There's nobody who says the drawings that are described here in these schematics for which the patent was obtained, that is a true and accurate depiction of the Tyrek trade dress for which we're claiming trade dress protection here. So just leaving aside the chain of title on the patent, you're saying that there – that no one in the testimony links the design patent schematic with any of the schematics here? Correct. There is an absolute – all there is is there's a declaration by Mr. Christie as the attorney identifying the design patent as a true and correct copy of a patent from the patent office. But there's absolutely no link to the chain of title or to the actual design it issued in this case. So you view that as a failure of proof? As a fatal – The district court didn't analyze it though, right? The district court did not expressly analyze the design patent. Okay. How long was the litigation pending? Over two years, Your Honor. And it involved depositions and extensive discovery both in the United States and China. What you said in your opening is demonstrably correct. Why didn't your client move to dismiss early on? The client did move to dismiss on jurisdictional grounds, Your Honor, on personal jurisdictional grounds. That motion was denied. And I believe the initial trial judge to whom this was – whom this was assigned felt that it was imperative that Tractel be allowed to move forward with discovery. The second fatal flaw in their argument in not recognizing the burden of proof is the extent of the burden of proof. It's been clear since the disc golf case in this circuit, and it's clear from the United States president, Supreme Court president, that the burden of proof the plaintiff has here is to prove that the design has no utilitarian advantage at all. That comes straight out of the disc golf case. Here, the evidence is undisputed that with respect to every discrete aspect from the fins to the size to the shape of the individual components to the configuration of the hoist as a whole, which makes it small and compact, it can fit into tight spaces on construction sites, there is at least one, if not several, utilitarian advantages to each component of the design. That in and of itself dooms an attempt to prove non-functionality under the Lanham Act. But how does that work in terms of the burden of proof? For example, they offered evidence that the exterior design is unrelated to how it functions. For example, at ER 170, ER 67, ER 169, 451, and so on. So they put evidence in. I guess what I'm struggling with, I'm not saying you don't win ultimately. I'm just concerned about whether the district court properly granted summary judgment. The traditional summary judgment standard is only evidence that would be admissible in trial, can't be considered in opposition to a motion for summary judgment to this great and disputed issue. The evidence that they're talking about is hearsay evidence where Mr. Theves says. And did you counter it with that response? Yes, in the briefing. It was clearly indicated in the briefing that Mr. Theves testified that somebody at the German plant who had never been made available for deposition, never identified as a person with knowledge, had told him something about the designer's intent. The same with Mr. Bertrand's testimony, which appears on some of the pages Your Honor just cited. He didn't even join TAL until the 1990s. He has no personal knowledge. He has an opinion that it has an interesting cubist linear design. But, again, that's not evidence. Why wouldn't that be evidence, just the same as an expert who parachutes in could make that statement? You don't have to be there at creation, do you? No, but there's no foundation other than the self-serving testimony of the plaintiff's  And there's no precedent that it has a linear design. Some of the factors that you see in the Clicksbill case and the Dissgolf case, for example, Your Honor asked about advertising. There the factor, the way to look at that factor is does – those are proxies for getting at functionality or arbitrariness. If, for example, the plaintiff's advertising had touted the design, had touted this as an ornamental, distinguishable – had touted the design aspects or the embellishments on the hoist in its advertising, that could be a proxy that they could use as circumstantial evidence to show that it's ornamental, arbitrary, embellished. Here, at the very most, you've got advertising that talks about the functionality of the hoist. You've got Mr. Bertrand and Mr. Thev talking about people buy the hoist because it works, because it's reliable, because its performance is efficient, because we provide good service. And I think their argument there is, well, they're talking about the motor or the function. They very well may. But then there's no evidence that they're advertising the exterior, which is what they're claiming the trade dress for, much less that they're advertising it as having some kind of decorative or arbitrary feature. So that factor clearly cuts against them. And again, keeping in mind that they've got the burden of proof. Their main argument below and on appeal is one that's squarely foreclosed by the Traffic Devices case and Disc Golf and TYTEC, which is they come to court and say there are other manufacturers out there that manufacture hoists that look different than ours. Therefore, the Lanham Act compels this manufacturer to manufacture its hoist in a way that looks different than TRACTEL. Traffic Devices and TYTEC foreclose that argument. You have to start at the beginning, which is that there is no prohibition against copying the design of another's product unless the product is protected by patent, trademark, or in certain circumstances, trade dress. Whereas here you've got a product configuration and the product is inherently utilitarian. All of this court's precedents, including Disc Golf, Leatherman, TYTEC, the Supreme Court's decision in traffics make it very clear that that is the point where the Lanham Act protection for an unregistered mark, an unregistered trade dress, this could have been registered, and it's not. It could have been claiming and enforcing a design patent. They did not. You've got an unregistered trade dress, so you're at the very lowest ebb of the protection available under the Lanham Act. The courts recognize that plaintiffs in those circumstances have a very significant burden to overcome. The law was not unsettled. The law in this respect has been clear in this circuit since at least 1999 that those are the hurdles that a plaintiff has. That is why the district court in this case not only entered summary judgment in favor of Jiangsu, but found this to be an objectively unreasonable filing of a complaint and it was objectively unreasonable for the plaintiff to continue pursuing the complaint despite proceeding over two years of discovery and never either having at the outset evidence of non-functionality and it never obtained any such evidence despite the incurrence of significant discovery fees. And again, as we point out in our brief, this is not evidence that would be uniquely in the hands of the defendant. Evidence of non-functionality would be evidence that if it existed at all would have been in the hands of Tractel or the affiliate in Germany that manufactures the product. This is not a case where they were forced to go through two years of discovery to see if they could locate evidence to prove their case. If it had existed, it should have existed in their possession at the time they filed the complaint. If that's the case, if they didn't need all this discovery, you could have moved for summary judgment ASAP, couldn't you? Well, we had to take discovery to see what they had, if anything. It turns out when we asked for any discovery. But if it's so obvious on the face of it, then it sort of cuts against your attorney's fees argument. If there really is a debate to be had here, you wouldn't, you don't need anything. You just go in. Well, Your Honor, there were, they make allegations in the complaint about the intent of the designers and that this was designed to achieve a particular appearance, a particular aesthetic. In discovery, we asked for documents. We asked for persons with knowledge. We took 30B6 depositions to get to the meat behind those allegations. You know, it turns out two years later that there's nothing behind it, that those allegations were made with no foundation in the evidence whatsoever. That's not something we could have known on a motion to dismiss where the court is taking those allegations as true. We had to test them through discovery. Are you relying upon the groundless exceptional definition under the Lanham Act? Groundless and unreasonable. Yes, Your Honor. Both of those. You're not relying upon vexatious or pursued in bad faith? No, Your Honor. Were any factual findings made with respect to the action being groundless or unreasonable? Yes, Your Honor. The district court, in its opinion, concluded, and again, this was not an opinion. I didn't ask you about conclusions. Factual findings. The factual findings were the actual absence of evidence. According to the district court, there was not one piece of evidence that supported their element. And keep in mind that this is an infringement case, and they lost on such a threshold provision. They lost on lack of functionality. The court didn't even need to get to secondary meaning. The court didn't need to get to infringement. And the court concluded that the absolute lack of evidence, after having lived with the case for two years, in his view, made this, this constituted both a groundless and unreasonable and continuing to pursue. What about, the question comes up there, although the court didn't ultimately rely on the design patent, that was one of the, and so we don't have any resolution of how it might be characterized. That certainly was one of their bases going in, is that you've got a patent that looks like the device here, and. But they never did anything with it, Your Honor. They never, again, they never tied the design to the, the design and those schematics to their design. They never came forward with evidence to show why the representation in the design patent, that it's a new invention. But why isn't that, why do you need testimony on something you can look at, which is what we're doing anyway in these trade dress cases? Well, if you look at those descriptions and the schematics, there's no indication as to what precisely the design is. You know, there are some very apparent differences between those schematics and the trade dress. For example, they claim that there are rectangular legs as part of the trade dress. If you look at pages 484 and 487, no legs appear in those drawings. Again, it's described on the first page of the patent as being a new invention in 2003, which is contrary to all of the testimony, which is this has been the trade dress since the early 80s. And again, the inventor is some gentleman whose name never appeared throughout the litigation. The inventors who were identified in the course of discovery are identified in our brief on page 22. He's not one of them. There's no patent assignment, nothing. There's nothing. There is absolutely nothing. So if there was some significance to that design patent, query why this isn't a patent case, a patent infringement case. They didn't bring those claims, and they certainly didn't even go to the lesser extent of trying to tie up that patent to shore up their trade dress claims here. Again, we recognize that a finding of an exceptional case, you don't get it every time you as a defendant win summary judgment. And we're not claiming that that would be the case. Here, this was such a, you know, given the combination of extensive discovery coupled with the absolute absence of evidence on a critical element for which the plaintiff had the burden of proof, the judge was well within his discretion to conclude that this was an exceptional case. Why is all this filed under seal? Your Honor, we did not request it to be filed under seal, and we have no objection to the seal being removed. Okay. Thank you. If there are no other questions, I'll rest on my briefs. Thank you. Thank you, Your Honors. I have put two minutes on the clock. We're going to take up a lot of your time with questions, so we'll give you two minutes for rebuttal. Thank you, Judge. Judge, briefly, Your Honor is absolutely correct. You can look at the design patent itself and, in your role as fact finders, make an assessment as to how closely it mirrors the Trey Dresset issue. There need not be testimony. That is something we need. So why wouldn't you put in testimony? I mean, she's pointed out some differences there to say, well, this actually is the foundation for the design. I mean, in other words, the reason we're bringing this case is that we have this design patent and it's a foundation for our case. Well, Judge, this is not a design patent infringement case. We did not assert the design patent as part of the case, as you know. Correct. But in trade dress cases, that can be a foundational basis. It can. And it's clear from the deposition testimony that Greifzug, the owner of the patent, is part of the same corporate family as Tractel. And, you know, as a result, under the way that the companies work, you know, Tractel does have rights to it. You know what puzzles me on this, counsel? I mean, coming into this, I found these various points that I mentioned that suggest that you had perhaps some evidence that could have been brought forward. Your opposing counsel has forcefully argued that whatever you had, you didn't bring forward. The district court's order, particularly in paragraph 8, indicates that you're just unable to establish that you've got anything protectable here. Could you bring any evidence? What's your response to that? I mean, whether you had it or not, that you didn't bring it to the court, is that a fair analysis? It is not a fair analysis, Judge. The order that the judge signed was spoon-fed by the Respondents. The judge did not. He signed it. He did sign it. That is correct. He did not make any factual findings on the record. The record is before the Court. He did not make any factual findings. We presented the evidence with regard to the design patent, with regard to the third parties who have history in the scaffolding business that shows that it's a source indicator. We showed that the advertising does not tout utilitarian advantage. We showed the alternative designs. The judge didn't want to hear it. He said, my gut feeling basically is that this is not a trade dress case. End of story. So we did have the evidence. We did marshal it. But the judge ignored it. So from your perspective, the kinds of things that I was referring to and my colleagues were referring to was all evidence, but it was weighed by the judge improperly. It should have been tried before prior fact, and summary judgment was inappropriate. Yes, Judge. That is correct. You know, likewise, I take issue with Respondents' view that TYTEC and the traffics knock this case out of the box. They do not. As Your Honor noted in Automatic Gold, the disc golf factors, and specifically at footnote 8, the disc golf factors survive. And the issue is whether the alternative designs should be considered in a context where there is or is not any other indicia of nonfunctionality, meaning you can't bootstrap nonfunctionality just based upon alternative design. In TYTEC, in Leatherman, in traffics, there was no inkling of nonfunctionality, and therefore the Court said, you know, you can't bootstrap it by virtue of the alternative design. Thank you. Thank you. I'd like to thank both counsel for your argument this morning. It's been most helpful. The case of Seacolt v. Wooshy, which is actually how it's titled in our caption, is submitted. Thank you.
judges: Hawkins, McKeown, Smith